[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15772
Non-Argument Calendar

_____

D. C. Docket Nos. 05-00084-CR-DHB-1
05-00121-CR-DHB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STACEY SHEFTON,
MICHAEL D. DUNN,
WILLIE J. ANDERSON, JR.,

Defendants,

ATTORNEY'S TITLE INSURANCE
FUND, INC.,

Interested Party-Appellant.

_____

No. 07-15773
Non-Argument Calendar

_____

D. C. Docket Nos. 05-00121-CR-DHB-1
05-00084-CR-DHB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE J. ANDERSON, JR.,

Defendant,

ATTORNEY'S TITLE INSURANCE FUND, INC.,

Interested Party-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

**(November 17, 2008)**

Before HULL, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Attorney's Title Insurance Fund, Inc. (the "Fund") appeals the district court's dismissal of the Fund's petition, under 21 U.S.C. § 853(n)(2), for an ancillary hearing with regard to the Fund's interest in certain property that was subject to a criminal forfeiture order. The district court held that the Fund's constructive trust on the property is not a legal interest that can defeat the

2

government's forfeiture claim. After review, we reverse.

## I. BACKGROUND

### A. Mortgage Fraud Scheme

This case involves a mortgage fraud scheme by which defendant Stacey Shefton fraudulently obtained $726,856.60 in loan proceeds from Long Beach Mortgage Company ("Long Beach") by presenting fraudulent documents.

The scheme began on November 23, 2004, when Lawrence Dillard (the "buyer") agreed to purchase real property at 1254 Greenridge Lane in Lithonia, Georgia (the "Greenridge Property") from PremierOne Properties (the "seller"). Before that sales transaction, GreenPoint Mortgage Funding, Inc. ("GreenPoint") already had two security deeds of record (the "GreenPoint mortgages") on the Greenridge Property.

In order to purchase the property, the buyer obtained two loans, totaling $800,000, from Long Beach. The Fund issued title insurance policies to Long Beach that insured Long Beach's security deeds securing the new loans.

Before closing, the seller informed the closing attorney that GreenPoint had sold its existing mortgages on the Greenridge Property and assigned them to Wilshire Mortgage Company ("Wilshire"). The seller gave the attorney statements purportedly from Wilshire that showed the amounts due to Wilshire to pay off the

existing mortgages.

At closing, the closing attorney issued two payoff checks, totaling $726,856.60, payable to Wilshire out of the Long Beach loan proceeds. The attorney mailed the checks to the address provided in Wilshire's loan payoff statements.

Several months later, Long Beach discovered that the GreenPoint mortgages had never been assigned to Wilshire or anyone else. Moreover, they were in default. Consequently, the first and second GreenPoint mortgages had not and would not be canceled. Long Beach's security deeds were subordinate to the existing GreenPoint mortgages, leaving Long Beach with little or no security for its loans.

Long Beach made claims on the two title policies issued by the Fund, and the Fund paid off the total amount due under the GreenPoint mortgages to clear the encumbrances on Long Beach's title. On or about October 31, 2005, the Fund paid GreenPoint a total amount of $742,000.

This mortgage fraud scheme that resulted in the Fund's $742,000 loss was perpetrated by Stacey Shefton and others. Shefton was affiliated with both Wilshire and the seller PremierOne, and leased the unused office space to which the payoff checks were sent. Shefton obtained for his personal use the entirety of

4

the Long Beach funds which were supposed to be used to pay off the existing mortgages and thus to clear title to the Greenridge Property and give Long Beach its desired security positions.  Thus, because Shefton diverted the Long Beach loan proceeds to himself, Long Beach is the direct victim of Shefton's fraud.

## B.    Criminal Case

Shefton was indicted and pled guilty to wire fraud.  As part of his plea agreement, Shefton agreed to forfeit to the United States certain property in his possession or control (the "Forfeited Property") that constituted or derived from proceeds Shefton obtained as a result of the wire fraud.  The Forfeited Property includes a car; a motorcycle; the funds in six different bank accounts; approximately $300,000.00 in cash seized from a storage facility; and furniture, appliances, and other personal property located at the Greenridge Property. Shefton admitted in his plea agreement that the cash and all the funds in the bank accounts represented proceeds of the mortgage fraud scheme by which Shefton intercepted the Long Beach loan proceeds.

The government sought, and the district court granted, a preliminary order of forfeiture.

Thereafter, the Fund asserted a legal interest in the Forfeited Property that Shefton obtained from the Long Beach loan proceeds.  The Fund petitioned the

5

district court for an ancillary hearing, pursuant to 21 U.S.C. § 853(n)(2), to adjudicate the validity of the Fund's alleged interest in the property. According to the Fund's petition, the Forfeited Property is, or can be traced to, the Long Beach loan proceeds,[1] which Shefton fraudulently obtained, and Shefton's fraud was the sole reason the Fund had to pay off the GreenPoint mortgages.

The government moved to dismiss the Fund's § 853(n)(2) petition. The government recognized Long Beach (and the Fund) as a victim of Shefton's fraud. However, the government argued that the Fund, "one of the many victims of the Shefton . . . fraud scheme," was merely an unsecured creditor and lacked standing to contest the forfeiture. Specifically, the government contended that the Fund did not have a "legal interest" in the Forfeited Property, as required by § 853(n)(6).

The Fund responded that it had the requisite legal interest through Long Beach. Shefton fraudulently obtained from Long Beach the proceeds of Long Beach's loans and used those proceeds to acquire the Forfeited Property. Long Beach was therefore entitled to a constructive trust on Shefton's Forfeited Property bought with Long Beach's money. And, pursuant to the terms of the Fund's title insurance policies and state law, the Fund was subrogated to the rights and claims

---

[1]As mentioned above, Shefton admitted that the cash and all the money in the bank accounts represented Long Beach loan proceeds. The Fund's petition further alleged that Shefton used the fraudulently obtained loan proceeds to purchase the car, motorcycle, furniture, appliances, and other personal property.

of Long Beach against Shefton once it paid off the GreenPoint mortgages on Long Beach's behalf. Thus, the Fund succeeded to all of Long Beach's rights and disabilities with respect to the Long Beach loan proceeds fraudulently transferred to Shefton. See Landrum v. State Farm Mut. Auto. Ins. Co., 527 S.E.2d 637, 638 (Ga. App. 2000). In other words, the Fund stands in the shoes of Long Beach. For simplicity, we will refer hereafter to the Fund's interest in the Forfeited Property, though the interest at the time of the fraud was Long Beach's.

In reply, the government did not contest that the Forfeited Property was, or was purchased with, the Long Beach loan proceeds. Instead, the government noted that Congress has not defined the term "legal interest" in § 853(n)(6)(A), and argued that "it would frustrate the operation and effect of the forfeiture statute" to construe as a § 853(n)(6)(A) "legal interest" a constructive trust that arises "whenever a victim to a fraud voluntarily transfers money to another person."

The district court granted the government's motion to dismiss, concluding that the Fund's constructive trust claim could not be imposed to defeat the government's forfeiture claim. The Fund appealed.

## II. STANDARD OF REVIEW

"In the context of third-party claims to criminally forfeited property, we review the district court's factual findings for clear error and its legal conclusions

7

de novo." United States v. Watkins, 320 F.3d 1279, 1281 (11th Cir. 2003).
Because the district court disposed of the Fund's ancillary hearing petition on the
government's motion to dismiss, we assume (as did the district court) that the facts
alleged in the petition are true. See Fed. R. Crim. P. 32.2(c)(1)(A). Thus, the only
issues before us in this appeal are legal ones meriting de novo review.

### III. DISCUSSION

Section 853 governs criminal forfeiture proceedings, see 28 U.S.C. §
2461(c), and provides that persons convicted of certain criminal violations shall
forfeit to the United States any property used to commit or facilitate the crime, or
any property "constituting, or derived from, any proceeds the person obtained"
from the crime, 21 U.S.C. § 853(a)(1)-(2). "All right, title, and interest" in the
forfeited property "vests in the United States upon the commission of the act
giving rise to forfeiture." 21 U.S.C. § 853(c).

Section 853(n) establishes a procedure for third parties who claim an interest
in forfeited property to avoid its forfeiture. Such parties may "petition the [district]
court for a hearing to adjudicate the validity of [their] alleged interest in the
property." Id. § 853(n)(2). The statute establishes the following standard by
which third-party interests are adjudicated:

> If, after the hearing, the court determines that the petitioner has
> established by a preponderance of the evidence that–

8

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

Id. § 853(n)(6) (emphasis added). The Fund does not claim to be a "bona fide purchaser for value" under § 853(n)(6)(B); rather, it proceeds exclusively under the "superior legal interest" prong in § 853(n)(6)(A). Thus, under § 853(n)(6)(A) the Fund must establish that: (1) Long Beach (the Fund's subrogor) had a legal interest in the Forfeited Property, and (2) Long Beach's interest was superior to Shefton's interest in the Forfeited Property (3) at the time of Shefton's fraud. If the Fund can demonstrate all three elements, then the order of forfeiture is invalid. 21 U.S.C. § 853(n)(6)(A).

The parties agree that we apply state law to determine the nature of the Fund's interest in the Forfeited Property. United States v. Fleet, 498 F.3d 1225, 1231 (11th Cir. 2007). On the other hand, whether the Fund's interest in the Forfeited Property is superior and thus renders the forfeiture order invalid under §

9

853(n)(6) is a matter of federal law.  Id.  We first examine the nature of the Fund's interest.

## A.    State Law

Under Georgia law, a constructive trust arises "whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."  O.C.G.A. § 53-12-93(a); see St. Paul Mercury Ins. Co. v. Meeks, 508 S.E.2d 646, 648 (Ga. 1998) ("[A] constructive trust is a remedy created by a court in equity to prevent unjust enrichment.").  Georgia courts have imposed constructive trusts upon money obtained by one person from another through fraud.  See, e.g., Bateman v. Patterson, 92 S.E.2d 8, 10 (Ga. 1956).

The Fund's petition alleges that Shefton obtained the $726,856.60 in payments from the Long Beach loan proceeds by presenting fraudulent loan payoff statements from Wilshire.  As a result, Long Beach was deprived of the bargained-for security for its loans, and, pursuant to its policies, the Fund was required to pay off the GreenPoint mortgages on Long Beach's behalf.

Assuming the facts alleged in the Fund's petition are true, we conclude that the Fund has established it is entitled to imposition of a constructive trust on the

Forfeited Property under Georgia law.  Shefton obtained the proceeds of the Long Beach loans through fraud; thus, he "cannot enjoy the beneficial interest" in the property he obtained from those loan proceeds "without violating [an] established principle of equity."  O.C.G.A. § 53-12-93(a); see Aetna Life Ins. Co. v. Weekes, 244 S.E.2d 46, 48 (Ga. 1978) ("A constructive trust arises . . . by equity with respect to property acquired by fraud . . . .").

We recognize the government argues that the Fund is not entitled to a constructive trust because the Fund has an adequate remedy at law based on the Attorney General's authority, pursuant to § 853(i)(1), to remit forfeiture "in the interest of justice."  However, § 853(i)(1) remission is a non-judicial remedy left entirely to the discretion of the Attorney General.  DSI Assocs. LLC v. United States, 496 F.3d 175, 186-87 (2d Cir. 2007); United States v. Lavin, 942 F.2d 177, 185-86 (3d Cir. 1991).  Under Georgia law, equitable remedies, such as constructive trusts, are not precluded by the existence of an alternate remedy that is "not as complete or effectual as the equitable relief."  O.C.G.A. § 23-1-4.  Given that § 853(i)(1) leaves to the government, which holds the forfeited property, full and unreviewable discretion as to whether it will release some or all of it, § 853(i)(1) remission is certainly not as complete or effectual as the equitable relief of a constructive trust.  Thus, we conclude that the Fund has, under these facts,

11

established an entitlement to a constructive trust on the Forfeited Property.

**B.     Federal Law**

We turn now to the effect of the Fund's constructive trust on the forfeiture

order.  We agree with the large majority of courts that have determined (1) that a

constructive trust, despite being an equitable remedy, constitutes a "legal right,

title, or interest in . . . property" under § 853(n)(6)(A),[2] and (2) that a constructive

trust can render a forfeiture order invalid pursuant to that subsection.  See United

States v. $4,224,958.57, 392 F.3d 1002, 1004-05 (9th Cir. 2004) (stating that if the

petitioners can prove the defendant defrauded them of funds he forfeited to the

government, they are beneficiaries of a constructive trust and can challenge the

forfeiture); United States v. Schwimmer, 968 F.2d 1570, 1574, 1582 (2d Cir. 1992)

(holding that Congress's reference to "legal right, title, or interest" included

interests arising in equity and that "a constructive trust warrants an amendment of

an order of forfeiture . . . if . . . the property ordered forfeited is traceable to

property held in constructive trust"); Lavin, 942 F.2d at 185-87 & n.10 (concluding

that Congress's reference in § 853(n) to "legal" interests extended also to equitable

ones, but determining that § 853(n)(6)(A) did not apply under the facts of the case

---

[2]Some of the cases discussed below construed the criminal forfeiture provisions set forth in 18 U.S.C. § 1963(l)(6).  But this Court has held that statute is "substantively identical" to § 853(n)(6) and has applied § 853(n) and § 1963(l) precedent interchangeably.  Watkins, 320 F.3d at 1283 n.2 (quotation marks omitted).

12

because the defendant's forfeiture-causing drug trafficking activity began three years before his constructive-trust-causing embezzlement); United States v. Campos, 859 F.2d 1233, 1238-39 (6th Cir. 1988) (stating in dicta that a constructive trust would constitute a superior interest under § 853(n)); United States v. Marx, 844 F.2d 1303, 1308 (7th Cir. 1988) (holding that a constructive trust interest in forfeited property can entitle a petitioner to relief from forfeiture).

Only one circuit court has concluded that a constructive trust cannot invalidate a forfeiture order. See United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1190-91 (D.C. Cir. 1995). In BCCI, the District of Columbia Circuit agreed with the other circuits that Congress did not intend "to draw the ancient, but largely ignored, distinction between technically legal and technically equitable claims in forfeiture challenges." Id. at 1190. However, it concluded that a constructive trust "is a remedy that a court devises after litigation," and therefore it cannot "be interposed as superior to the government's forfeiture claim" because forfeiture vests title in the government at the time of the defendant's wrongdoing. Id. at 1190-91. The district court adopted BCCI's holding in dismissing the Fund's petition.

We are unpersuaded by the reasoning in BCCI. First, one of its premises is incorrect. Although a constructive trust is a judicially recognized remedy, see

13

Meeks, 508 S.E.2d at 648, it arises when the underlying equities exist, not when it is announced, United States v. 1419 Mount Alto Rd., 830 F. Supp. 1476, 1481-82 (N.D. Ga. 1993) (applying Georgia law); see also $4,224,958.57, 392 F.3d at 1004 ("It is an elementary mistake to suppose that a court creates the trust . . . . The obligation on the fraudster is imposed by law and arises immediately with his acquisition of the proceeds of the fraud."). Thus, the Fund's constructive trust arose upon transfer of the Long Beach loan proceeds to Shefton.[3]

Second, the issue is not, as the court in BCCI stated, whether a petitioner's constructive trust interest "can be interposed as superior to the government's forfeiture claim." BCCI, 46 F.3d at 1191. Rather, it is whether the petitioner's interest is superior to the defendant's interest in the forfeited property. See 21 U.S.C. § 853(n)(6)(A) (stating that a criminal forfeiture order may be invalidated if "the petitioner has a legal right, title, or interest in the property . . . [that] was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture" (emphasis added)).

---

[3]The government contends that the Fund's involvement did not begin until it paid off the GreenPoint mortgages, which occurred well after the fraud, which ensued when the Long Beach loan proceeds were transferred to Shefton. Hence, the government argues, the Fund's interest in the Forfeited Property arose after forfeiture, too late to satisfy § 853(n)(6). However, as mentioned above, the Fund was subrogated to Long Beach's rights. Consequently, the Fund legally "stands in the shoes" of Long Beach, see Landrum, 527 S.E.2d at 638 (quotation marks omitted), and thus the relevant issue is the nature of Long Beach's interest – not the Fund's – at the time of the fraud.

14

Accordingly, we agree with the majority of circuits that have held that a constructive trust can serve as a superior legal interest under § 853(n)(6)(A) and thus can serve as grounds for invalidating a criminal forfeiture order. We reverse the district court's dismissal of the Fund's petition and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**