[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 17, 2010
JOHN LEY
CLERK

No. 09-10446

_____

D.C. Docket No. 07-00061-CR-01-TWT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY MICHAEL RAMUNNO, JR.,

Defendant,

THOMAS MARTIN,

Claimant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 17, 2010)

Before BLACK, WILSON and COX, Circuit Judges.

PER CURIAM:

Anthony Michael Ramunno, Jr. pleaded guilty to one count of mail fraud and one count of wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343 respectively. As part of his plea agreement, Ramunno agreed to forfeit his ill-gotten gains to the Government. The district court entered a preliminary order of forfeiture by consent. Thomas Martin, one of Ramunno's victims, petitioned the district court to amend its preliminary order of forfeiture, contending that he was entitled to a constructive trust in the funds he invested with Ramunno. The district court granted the Government's motion to dismiss Martin's petition. Martin appeals. We affirm.

## I. BACKGROUND & PROCEDURAL HISTORY

In February 2007 a federal grand jury indicted Ramunno on mail and wire fraud charges. The indictment alleges that Ramunno fraudulently induced his victims to invest in a fund based on forged audits and fictitious earnings statements. Ramunno represented to potential investors that he was a successful commodity futures trader, that funds entrusted to him would be invested in commodity futures, and that investors should expect a significant rate of return. Instead, Ramunno perpetrated a "Ponzi scheme"—he used participant funds to give false profits to earlier investors and misappropriated funds to cover his personal expenses. Though no evidentiary hearing was conducted, the district court appears to have accepted the Government's argument that Ramunno defrauded approximately ninety victims of $20 million

2

through this scheme. (R.3-91 at 1.) He ultimately pleaded guilty to one count of wire fraud and one count of mail fraud.

Martin invested approximately $2 million with Ramunno in January 2007. On January 23, 2007, the United States seized Ramunno's assets, which were valued at between $5 and $6 million. (R.3-91 at 1-2.) The seized assets included a Washington Mutual bank account containing $2,162,845.24. Martin alleges he can trace the $2 million he invested with Ramunno to this account.

Ramunno agreed to forfeit the seized assets. The district court entered a preliminary order of forfeiture and initiated ancillary proceedings in which third-parties could contest the forfeiture pursuant to 21 U.S.C. § 853(n). Martin filed a petition to amend the preliminary order of forfeiture. He asserted that he was entitled to a return of the $2 million he invested because it was subject to a constructive trust in his favor. The Government moved to dismiss Martin's petition. The district court summarily granted the Government's motion and, without an evidentiary hearing, entered a final order and judgment of forfeiture in favor of the Government. Martin appeals.

## II. ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

Two questions are presented. One is an issue of state law: the nature of Martin's interest in the forfeited funds. We must determine whether Martin's petition

can establish his right to a constructive trust under Georgia law. If not, the inquiry ends. *See United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir. 2008). But if, taking the allegations contained in the petition as true, we find that Martin can establish his entitlement to a constructive trust in the forfeited funds, we must then decide the federal law issue. *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008). The federal law issue is whether under § 853(n)(6)(A) the constructive trust constitutes an interest superior to Ramunno's. The answer to this question turns on whether Martin's constructive trust relates back to the time that the fraud occurred and therefore must be excluded from the forfeiture order.

Martin contends that it was improper for the district court to consider "traditional principles of equity and fairness" in finding that he was not entitled to a constructive trust (R.3-91 at 3) because under this court's holding in *Shefton* a constructive trust arises automatically when a fraud occurs.[1] Even if the court does

---

[1] In *Shefton*, the defendant fraudulently obtained $726,856.60 in loan proceeds from Long Beach Mortgage Company. *Shefton*, 548 F.3d at 1361. Attorney's Title Insurance Fund, Inc. issued title insurance policies to Long Beach that insured Long Beach's security deeds securing the loans. *Id.* The defendant was indicted, pleaded guilty to wire fraud, and agreed to forfeit the property he had purchased with the fraudulently obtained proceeds of the Long Beach loan. The district court entered a preliminary order of forfeiture, and the Fund asserted an interest in the property the defendant had purchased with the Long Beach loan proceeds that were traceable to the property. The Fund asserted that Long Beach should receive a constructive trust in the property and that the Fund was subrogated to the rights and claims of Long Beach against Shefton. That is, "the Fund [stood] in the shoes of Long Beach." *Id.* at 1363. The Government moved to dismiss the Fund's petition, contending that the Fund was merely one of many victims of the fraud and that the Fund's status was that of an unsecured creditor. The district court granted the Government's motion to dismiss; after assuming arguendo that the Fund could

4

consider principles of equity, Martin argues that principles of fairness direct that he should receive a constructive trust because he has the ability to trace his investment to the funds at issue. In contrast, the Government contends that *Shefton* does not dictate "that the trust arises automatically in response to fraud regardless of whether the district court, sitting as a court of equity, viewed the imposition of the trust as equitable and fair." (Appellee's Br. at 26.) Therefore, according to the Government, the district court correctly declined to grant Martin a constructive trust because doing so would elevate his interest in the limited funds above that of similarly situated victims, which would be inequitable. Instead, the Government asserts, Martin's appropriate remedy is the Attorney General's remission process, which allows the Attorney General to "restore forfeited property to victims . . . [as] is in the interest of justice." § 853(i)(1).

With respect to the federal issue, Martin contends that this circuit's precedent in *Shefton* holds that a constructive trust may serve as a superior legal interest under the statute. The Government argues that *Shefton* was wrongly decided and contends that a constructive trust is only "an inchoate interest until it is imposed by a court, and

---

establish a constructive trust, the district court found that such a constructive trust could not defeat the Government's forfeiture claim, the federal law issue. On appeal, this court reversed, holding that the Fund was entitled to a constructive trust and that the constructive trust constituted a superior legal interest under § 853(n)(6)(A).

thus does not qualify as a *pre-existing* interest in the property within the meaning of Section 853(n)(6)(A)." (Appellee's Br. at 36.)

## III. STANDARD OF REVIEW

"In the context of third-party claims to criminally forfeited property, we review the district court's factual findings for clear error and its legal conclusions *de novo*." *Shefton*, 548 F.3d at 1363 (quoting *United States v. Watkins*, 320 F.3d 1279, 1281 (11th Cir. 2003)). However, because a constructive trust is an equitable remedy, we review the district court's decision not to impose a constructive trust for an abuse of discretion. *See Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1220 (11th Cir. 2002).

## IV. DISCUSSION

Under 21 U.S.C. § 853(n), a third-party asserting an interest in forfeited property may petition the court to have his or her interest excluded from the forfeiture. The statute recognizes two scenarios in which a court must amend the forfeiture order. Only the first is at issue in this case: a court must amend the order when the petitioner demonstrates, by a preponderance of the evidence, that

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of

the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section[.]

§ 853(n)(6)(A).

A court's preliminary forfeiture order does not consider third-party interests. But the court must amend the final order of forfeiture to exempt the *qualifying* interests of third-parties. *Andrews*, 530 F.3d at 1236. Martin's petition alleges he has a qualifying interest pursuant to § 853(n)(6)(A). To prove he has a qualifying interest under this section, Martin must show that: (1) he had a legal interest in the forfeited property; (2) his legal interest in the forfeited property was superior to Ramunno's interest; and (3) his legal interest was superior to Ramunno's interest *at the time* of Ramunno's fraud. *Shefton*, 548 F.3d at 1364. While Georgia law determines the nature of Martin's interest in the property—that is, whether he is entitled to a constructive trust, *id.* (citing *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007))—we apply federal law to determine whether that interest is a "legal interest" under § 853(n)(6)(A) and whether it was superior to Ramunno's interest at the time of the fraud.

We first consider the state law question of whether Martin has met the requirements of a constructive trust. "The constructive trust, a creature of equity, is the 'formula through which the conscience of equity finds expression.'" *Mitsubishi*

7

*Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1518 (11th Cir. 1994) (quoting 5 Austin W. Scott, *The Law of Trusts*, § 462, at 3413 (3d ed. 1967)). In Georgia, "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to the property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." O.C.G.A. § 53-12-93(a); *Lee v. Lee*, 392 S.E.2d 870, 872 (Ga. 1990) (noting that under Georgia law "a constructive trust may be imposed where property has been acquired by fraud, or where, though not acquired by fraud it is against equity that it should be retained by the person who holds it."); *Murray County v. Pickering*, 26 S.E.2d 287, 292 (Ga. 1943) ("A constructive trust is not created by any words, either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice.") (internal quotations and citations omitted); *Troutman v. Troutman*, 676 S.E.2d 787, 790 (Ga. Ct. App. 2009) ("[A] constructive trust is a remedy created by a court in equity to prevent unjust enrichment.") (quotations and citations omitted). Under Georgia law, constructive trusts are available as a remedy to recover money lost through fraud. *Shefton*, 548 F.3d at 1364 (citing *Bateman v. Patterson*, 92 S.E.2d 8, 10 (Ga. 1956)); *Eason v. Farmer*, 409 S.E.2d 509 (Ga. 1991).

8

Martin's argument that a court's role is limited to simply recognizing a constructive trust that is already in existence is misguided. He contends that a constructive trust arises automatically whenever a fraud occurs. This argument is mistaken and is not the law in Georgia. As the Georgia Supreme Court has explained, a constructive trust is created "by the construction of equity in order to satisfy the demands of justice." *Murray County*, 26 S.E.2d at 292 (citation omitted). "[T]here is nothing in the Georgia statutory or decisional law to indicate that ordinary maxims of equity jurisprudence do not apply."[2] *Mitsubishi*, 14 F.3d at 1518. *Shefton* does not mandate that we throw considerations of fairness and equity out the window when determining whether to recognize a constructive trust. To the contrary, Georgia law *requires* courts to consider principles of fairness in making this determination. *Murray County*, 26 S.E.2d at 292. Thus, we reject Martin's assertion that a constructive trust arises automatically, and that a court's role is limited to simply recognizing an already existing interest.

---

[2]Martin cites *Shefton* for the proposition that once a fraud has been committed, a constructive trust "arises when the underlying equities exist, not when it is announced," *Shefton*, 548 F.3d at 1366 (citing *United States v. 1419 Mount Alto Rd.*, 830 F. Supp. 1475, 1481-82 (N.D. Ga. 1993), and "[i]t is an elementary mistake to suppose that a court creates the trust [because t]he obligation on the fraudster is imposed by law and arises immediately with his acquisition of the proceeds of the fraud." *Shefton*, 548 F.3d at 1366 (quoting *United States v. $4,224,958.27 ("Boylan"),* 392 F.3d 1002, 1004 (9th Cir. 2004)). Importantly, though, when citing to these quoted passages, *Shefton* was considering the federal law temporal question, not the threshold state law question of whether a constructive trust exists.

*Shefton* is not binding on this state law issue because that case primarily addressed the federal law issue. In *Shefton*, both parties and the district court had assumed arguendo the existence of a constructive trust. After noting the existence of both a federal and state law question, the district court wrote that the determinative issue is whether the constructive trust, if established, could defeat the Government's property right claim. Thus, unlike this case, whether a constructive trust existed was not at issue. Moreover, the facts in this case are distinguishable from those in *Shefton*. Here, there were multiple victims of the same fraudulent scheme. In contrast, while *Shefton* may have involved multiple victims, they were not victims of the same continuing scheme.

After considering traditional principles of fairness and equity, the district court declined to award Martin a constructive trust. The district court found that because Martin was only one of Ramunno's many victims, to allow him to fully recover his loss

> from the limited pool of recovered assets at the expense of the remaining victims would render an inequitable and fundamentally unfair result . . . The only difference between [ ] Martin and the other victims is that he was defrauded last. This distinction should not dictate that he receive more of the forfeited assets than the other victims of the fraud.

(R.3-91 at 3-4.) Indeed, we agree that equity demands that no victim be given priority over any other similarly situated victim. *Andrews*, 530 F.3d at 1238. Fairness does

10

not call for a constructive trust in this case even if Martin can prove that he can trace, because it would elevate his position over that of similarly situated victims. If Martin were granted a constructive trust to recoup his entire $2 million loss, the pool of funds available to be distributed to Ramunno's other victims through the Attorney General's remission process would be reduced. If the funds are distributed equitably to all victims, then each victim, including Martin, may recover some fraction of their lost investments. However, if Martin is granted a constructive trust and recovers his entire loss, the other victims would recover less than their pro-rata share of the seized assets.

Accordingly, the district court did not abuse its discretion in declining to grant Martin a constructive trust. *Id.* (finding that "a court should not employ an equitable fiction to elevate one claim over the claims of other creditors if those creditors are similarly situated.") (quotations and citations omitted); *S.E.C. v. Elliott*, 953 F.2d 1560, 1569 (11th Cir. 1992) (holding that the district court did not abuse its discretion by disallowing tracing, when allowing a defrauded investor to recoup his entire investment would elevate his position over that of similarly situated victims, thereby

creating an inequitable result); *United States v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996).[3]

Because we hold that the district court did not abuse its discretion by finding that Martin is not entitled to a constructive trust, we need not consider the federal law issue. *Andrews*, 530 F.3d at 1237. If Martin is not entitled to a constructive trust, any error relating to the federal issue is harmless.

## V. CONCLUSION

For the foregoing reasons, we hold that the district court did not abuse its discretion by declining to grant Martin a constructive trust.

**AFFIRMED.**

---

[3] If Martin received a constructive trust limited to his pro-rata share of the forfeited assets, the potential unfairness to the other fraud victims would appear to be eliminated. But neither party argued for a pro-rata constructive trust either in the district court or on this appeal. We cannot say that the district court abused its discretion in this case by failing to consider the pro-rata approach given the fact that neither party asked the district court to consider it. And, we express no opinion as to whether Georgia law would support the imposition of a constructive trust limited to Martin's pro-rata share of forfeited assets.