UNITED STATES of America

v.

**Jose RIBADENEIRA, Albio Alzate, and Cambiaria C & F Casa De Cambio C.A., Defendants.**

**No. 91 Crim. 224 (LBS).**

United States District Court, S.D. New York.

April 1, 1996.

---

Mary Jo White, United States Attorney, Southern District of New York, Ellen Silverman Zimiles, Peter T. Gelfman, Sharon Cohen Levin, Assistant United States Attorneys, New York City, for U.S.

Holtzman & Taikeff, New York City (Stuart A. Holtzman, of counsel), for Petitioners/Putative Claimants.

Martin J. Auerbach, New York City, for the Superintendent of the Banks of Ecuador.

## OPINION

SAND, District Judge.

This action stems from the Government's forfeiture of funds involved in a money laundering scheme from Cambiaria C & F ("C & F"), a now-defunct exchange house, and others, pursuant to 18 U.S.C. § 982. Various financial institutions and individuals—Banco Popular, Filanbanco, Gregorio Ormaza, Guislain Wattel, Juan Jose Avellan, Francelana, S.A., Maria Cordero, Gustavo Vallejo Perez, Fernando Pena, Simon Coral, Secretej Cia. Ltda., Carlos Ariba, and Stella Barrera (hereafter "petitioners")—all holding dollar checks drawn on C & F, have filed petitions pursuant to 21 U.S.C. § 853(n)(2), asserting rights in the funds that are subject to the forfeiture order. The question before us is whether petitioners have a legal interest in the property seized.

## BACKGROUND

On March 12, 1991, Jose Ribadeneira ("Ribadeneira") and Albio Alzate ("Alzate") were arrested and charged with laundering approximately thirty million dollars through C & F. A federal grand jury subsequently indicted C & F, Ribadeneira, and Alzate. On January 22, 1992, Ribadeneira and Alzate pled guilty to conspiracy and money laundering charges and agreed to the criminal forfeiture of various assets, including several accounts in the name of C & F. A Final Order of Forfeiture was entered on March 5, 1993, which forfeited to the United States approximately 2.1 million dollars from the seized C & F assets. On June 25, 1992, and August 6, 1992, the Government published, in the Miami Review and the New York Law Journal respectively, notice of the forfeiture order and of its intent to dispose of the funds contained in the order, in compliance with 21 U.S.C. § 853(n)(1).

Petitioners are customers of C & F. After having obtained from the Court an extension of the requisite time within which to file petitions contesting the forfeiture order, pursuant to 21 U.S.C. § 853(n)(2), on December 8, 1995, petitioners filed petitions claiming a legal interest in the seized assets. Specifically, they alleged that they had purchased United States dollar checks from C & F through transactions, whereby, with two exceptions, they exchanged an equivalent amount of Equadorian sucres for the dollar checks purchased. In two instances—the exceptions noted above—the dollar checks were purchased not with sucres but with American dollars.

Contending that under 21 U.S.C. § 853(n)(2) and (n)(6), petitioners lack standing to contest the forfeiture, the Government seeks dismissal of the petitions. For the reasons stated below, we agree with the Government and dismiss the petitions.

## DISCUSSION

The relevant statutory law provides that

Any person, other than the defendant, asserting a *legal interest* in property which has been ordered forfeited to the United States pursuant to this section may ... petition the court for a hearing to adjudicate the validity of his alleged interest in the property....

21 U.S.C. § 853(n)(2) (emphasis added). Once a petition has been filed under (n)(2), the court conducts a hearing to determine whether

(A) the petitioner has a legal right, title, or interest in the property, ... [that] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of pur-

chase reasonably without cause to believe that the property was subject to forfeiture under this section. . . .

21 U.S.C. § 853(n)(6). If the court finds by a preponderance of the evidence that the petitioner falls within either of the above two categories, the court must amend the forfeiture order so as accordingly to restore a properly apportioned part of the seized property to the third party petitioner. *Id.*

The Government contends that as general creditors, petitioners do not possess a legal interest in the seized C & F funds under 21 U.S.C. § 853(n)(2) and thus lack standing to contest the order of forfeiture. "The mere fact that [petitioners] hold checks drawn on C & F accounts does not give them a legal interest in the specific funds . . . seized in the C & F accounts." Letter of Peter T. Gelfman and Sharon Cohen Levin, Assistant United States Attorneys, Dated January 26, 1996, at 3.

■ Petitioners assert a legal interest in the C & F accounts as bona fide purchasers pursuant to 21 U.S.C. § 853(n)(6)(B). Specifically, they claim two special rights as bona fide purchasers of the seized funds: a right of withdrawal and a right of ownership. All petitioners assert a "right to employ the United States banking system to withdraw the number of Dollars purchased . . . from checking accounts on which the Dollar checks were drawn. . . ." Letter from Stuart Holtzman, Dated February 23, 1996, at 3. Those petitioners who purchased the dollar checks in foreign currency transactions, with sucres as opposed to dollars, claim an "additional right of ownership of the seized U.S. Dollars received in trade, represented by the U.S. Dollar check." Letter from Stuart Holtzman, Dated August 15, 1995, at 2.

However, as the specific property in which petitioners assert both withdrawal and ownership rights is by its very nature incapable of identification, petitioners can not claim a sufficiently identifiable legal interest to satisfy subsection (n)(2). Dollars are fungible. As holders of checks, as opposed to security interests, petitioners are unable to assert

rights to a particular asset or specified funds. Like bank depositors, petitioners are general creditors who

> have no interest in the specific accounts to which their deposits might be traced, only in the defendant's estate as a whole—and therefore can have no interest in particular assets forfeited, . . . unless they have already secured a judgment against the debtor and perfected a lien against a particular item.

*United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1191 (D.C.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Even the case relied on most heavily by petitioners, *Koreag v. Refco F/X Associates, Inc.,* 961 F.2d 341 (2d Cir.), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992), supports the proposition that currency is inherently nonspecific and unidentifiable. 961 F.2d at 358. Unlike purchasers of specified antique coins or earmarked out-of-print bills, petitioners here can point to no particular asset and call it their own. As general unsecured creditors, they do not qualify as bona fide purchasers under subsection (n)(6)(B) for purposes of challenging statutory forfeiture, *see BCCI,* 46 F.3d at 1191–92; *United States v. Campos,* 859 F.2d 1233, 1237–38 (6th Cir. 1988), and thus lack standing to assert a "legal interest" under subsection (n)(2).

In addition, we note that the alleged right of withdrawal is not a possessory right. A check is not an assignment of funds until it has been accepted for payment. N.Y.U.C.C. § 3–409.[1] As holders of checks asserting a right to withdraw money from specified accounts, petitioners thus can not claim a possessory interest in the named funds. Having no "right, title, or interest in the property," petitioners can not qualify as bona fide purchasers under subsection (n)(6)(B) and are thus unable to assert a "legal interest" under subsection (n)(2).

As an alternative argument, petitioners maintain that the Court should impose a constructive trust, naming petitioners as beneficiaries thereunder, and that such a trust, although equitable in nature, would consti-

---

**1.** As the letter briefs of both sides cite to sections of the New York Uniform Commercial Code, we deem the applicability of New York law to be uncontested.

tute a "legal interest" under the statute. Indeed, courts have interpreted the "legal interest" requirement of subsection (n) loosely, to encompass both legal and equitable claims. *See BCCI*, 46 F.3d at 1190 (looking to "Congress' real intent"); *United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992) (reading "legal" to mean "under the law," as opposed to non-equitable). In support of their position, petitioners point to subsection (*o*), which instructs that "[t]he provisions of [Section 853] shall be liberally construed to effectuate its remedial purposes." 21 U.S.C. § 853(*o*).

It is hornbook law that before a court may impose equitable relief, it must find there to be no adequate legal remedy available. *See, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381, 112 S.Ct. 2031, 2035–36, 119 L.Ed.2d 157 (1992). The Government maintains that petitioners, as creditors, can assert claims directly against C & F and can also petition the Attorney General for statutory relief under 21 U.S.C. § 853(i). Although we are not wholly convinced of the adequacy, practically speaking, of the option of filing claims directly against a defunct institution whose assets are under government control, we do consider Section 853(i) to be not only a satisfactory, but also the appropriate, legal remedy for petitioners here. The D.C. Circuit, examining the legislative intent behind Section 853, has concluded that it is subsection (i), not (n), that was designed to protect those who innocently transacted with the debtor-defendant—those, like petitioners, with general claims against the estate, but without secured rights in specific identified property. *BCCI*, 46 F.3d at 1192. Thus, as 21 U.S.C. § 853(i) affords petitioners an adequate remedy at law, it would be inappropriate to afford petitioners equitable relief in the form of a constructive trust.

## CONCLUSION

We hold that petitioners, lacking an identifiable legal interest in the seized assets, do not have the requisite standing to contest the forfeiture order. Accordingly, we dismiss their petitions and decline to amend the Final Order of Forfeiture.

SO ORDERED.