10-1616-cv
USA v. MacKay

UNITED STATES COURT OF APPEALS
For the Second Circuit

————————————————————

August Term, 2010

(Argued:   March 30,  2011                                        Decided:   July  14,  2011)

Docket No. 10-1616-cv

————————————————————

WILLIS MANAGEMENT (VERMONT), LTD., VENTURE REINSURANCE COMPANY, LTD.,

*Petitioners-Appellants*,

AMY LYNN MACKAY, CREATIVE SOUND, WILLISTON, TOWN OF,

*Petitioners*,

—v.—

UNITED STATES OF AMERICA,

*Appellee*,

PEOPLE'S UNITED BANK,

*Petitioner-Appellee*,

KENNETH MACKAY,

*Defendant.**

————————————————————

* The Clerk of the Court is directed to amend the official caption as set forth above.

1

Before: STRAUB, SACK, and LYNCH, *Circuit Judges*.

_____

Petitioners-Appellants Willis Management (Vermont), Ltd., and Venture Reinsurance Company, Ltd., appeal from a Memorandum and Order and Final Order of Forfeiture entered by the United States District Court for the District of Vermont (William K. Sessions, III, then-*Chief Judge*) dismissing their petition for an ancillary hearing and rejecting their claim as beneficiaries of a putative constructive trust in Defendant Kenneth MacKay's forfeited assets. The District Court ruled that the remission provision of 21 U.S.C. § 853(i) precluded the imposition of a constructive trust in the petitioners' favor. It also determined that imposing a constructive trust would be inconsistent with the forfeiture statutory scheme provided in § 853. Because we conclude that § 853(i) does not preclude, as a matter of law, recognizing a constructive trust and because a constructive trust is not inconsistent with the forfeiture statutory scheme, we vacate the petitioners' dismissal from the ancillary proceeding, vacate the Final Order of Forfeiture, and remand the case to the District Court for further proceedings

_____

MATTHEW B. BYRNE (ROBERT B. HEMLEY, *on the brief*), Gravel and Shea, Burlington, VT, *for Petitioners-Appellants*.

CAROL L. SHEA, Assistant United States Attorney, *for* TRISTRAM J. COFFIN, United States Attorney for the District of Vermont, Burlington, VT, *for Appellee*.

DEBRA L. BOUFFARD (ERIC S. MILLER, *on the brief*), Sheehey Furlong & Behm P.C., Burlington, VT, *for Petitioner-Appellee*.

_____

STRAUB, *Circuit Judge*:

Petitioners-Appellants Willis Management (Vermont), Ltd. ("Willis"), and Venture Reinsurance Company, Ltd. ("Venture"), an affiliate of Willis (collectively, the "petitioners"), appeal from a Memorandum and Order and Final Order of Forfeiture entered by the United States District Court for the District of Vermont (William K. Sessions, III, then-*Chief Judge*) dismissing their petition for an ancillary hearing and rejecting their claim as beneficiaries of a putative constructive trust in Defendant Kenneth MacKay's forfeited assets. The District Court ruled that the remission provision of 21 U.S.C. § 853(i) precluded the imposition of a constructive trust in the petitioners' favor. It also determined that imposing a constructive trust would be inconsistent with the forfeiture statutory scheme provided in § 853. Because we conclude that § 853(i) does not preclude, as a matter of law, recognizing a constructive trust and because a constructive trust is not inconsistent with the forfeiture statutory scheme, we vacate the petitioners' dismissal from the ancillary proceeding, vacate the Final Order of Forfeiture, and remand the case to the District Court for further proceedings.

**BACKGROUND**

Kenneth MacKay worked for Willis, a business that manages captive insurance companies,[1] from 1996 to 2008. From December 2006 to 2008, MacKay served as Willis's Senior Vice President and had the authority to make payments from Willis's bank accounts and the accounts of its clients and affiliates to various insurance companies and other businesses. In January 2000, MacKay incorporated RCM Financial Corporation ("RCM Financial"), which had an account at People's United Bank (formerly known as Chittenden Bank).[2] From approximately January 2004 until early 2008, MacKay embezzled money from Willis and its clients and diverted that money to his own personal use through the RCM Financial account and through other means. MacKay used a portion of the embezzled money to build a home in Williston, Vermont. MacKay then obtained a $500,000 home-equity line of credit from People's United Bank secured by a mortgage on his Williston home. MacKay used part of this line of credit to buy a condominium in Orlando, Florida.

On February 19, 2008, Willis and Venture—aware of an ongoing federal investigation into MacKay—filed a civil action against MacKay in Vermont state court alleging fraud and other claims. On the same day, Willis and Venture obtained a state-court writ of attachment on MacKay's Williston and Orlando properties. On February 20, 2008, People's United Bank filed a similar state-court action against MacKay, which was consolidated with Willis's and Venture's case.

---

[1] A captive insurance company is owned by, and insures the risk of, its operating company or a group of operating companies. Captive insurance companies are typically reinsured by other insurance companies. *See In re Petition of Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 272 B.R. 396, 400 n.1 (Bankr. S.D.N.Y. 2002).

[2] All references herein to "People's United Bank" also refer to its predecessor, Chittenden Bank.

On February 27, 2008, the United States filed a criminal complaint against MacKay in the United States District Court for the District of Vermont. That same day, the United States filed civil forfeiture complaints against MacKay's Williston and Orlando properties, which complaints were stayed while the criminal action proceeded. On September 2, 2008, the United States filed an Information charging MacKay with wire fraud, pursuant to 18 U.S.C. § 1343, with tax evasion, pursuant to 26 U.S.C. § 7201, and with money laundering, pursuant to 18 U.S.C. § 1957. A criminal forfeiture allegation included in the Information against MacKay sought forfeiture of both his Williston and Orlando properties pursuant to 18 U.S.C. § 982(a)(1)-(2). Forfeiture under that section is governed by the forfeiture provisions of 21 U.S.C. § 853. *See* 18 U.S.C. § 982(b)(1). On September 25, 2008, MacKay pleaded guilty to the Information and agreed to forfeit his two properties and at least $4 million to the United States. The final, amended judgment of conviction identified Willis as the victim of MacKay's crimes and ordered restitution in the amount of $5,376,534.11.

The District Court issued Preliminary Orders of Forfeiture on MacKay's Williston and Orlando properties on November 20, 2008. In response, Willis and Venture filed a petition for a criminal ancillary proceeding pursuant to 21 U.S.C. § 853(n), claiming that they were the real owners of the properties because MacKay exclusively used funds stolen from Willis to purchase the homes. People's United Bank also filed a petition for an ancillary proceeding, claiming an interest in both properties as a result of MacKay's outstanding $261,624.95 of indebtedness on his home-equity line of credit. Amy MacKay, Kenneth's wife, filed a petition claiming an interest in both the Williston and Orlando properties. Creative Sound, a creditor of MacKay,

sent a letter to the United States Attorney asserting an interest in the Williston property, which letter was construed by the District Court as a petition for an ancillary proceeding. Finally, the Town of Williston filed a petition asserting an interest in the Williston property as a result of MacKay's unpaid property taxes.

The United States subsequently moved to dismiss Willis and Venture from the ancillary proceeding on the ground that the petitioners could not show that they had a "legal . . . interest" in the property pursuant to 21 U.S.C. § 853(n)(6)(A).[3] The District Court granted the United States' motion (and also dismissed Amy MacKay and Creative Sound from the proceeding) by a Memorandum and Order dated February 11, 2010. The District Court rejected Willis's and Venture's argument that they were the beneficiaries of a putative constructive trust in the properties because the properties were purchased with money stolen from Willis. The District Court first explained that a constructive trust is an equitable remedy that should only be used when an adequate legal remedy is unavailable. The Court then determined that *United States v. Ribadeneira*, 105 F.3d 833, 837 n.5 (2d Cir. 1997) (per curiam), "supports the conclusion" that the remission provision in 21 U.S.C. § 853(i) is an adequate legal remedy that "preclude[s] the imposition of a constructive trust." *United States v. MacKay*, No. 08-cr-106, slip. op. at 12 (D. Vt. Feb. 11, 2010). The District Court did note that in *United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992), we held that a constructive trust could serve as a "legal interest" superior to the defendant's interest under an analogous forfeiture statute. The District Court, however, "decline[d] to follow *Schwimmer* and instead follow[ed] *Ribadeneira*" because it

---

[3] As discussed below, 21 U.S.C. § 853(n)(6)(A) directs the District Court to amend any order of forfeiture if a third-party petitioner, such as Willis or Venture, shows that it "has a legal right, title, or interest in the property" to be forfeited that "was vested in the petitioner" or "was superior to any right, title, or interest of the defendant."

6

determined that "as borne out in the later *Ribadeneira* case, an approach allowing for a constructive trust when a legal remedy is available is 'inconsistent with the statutory remedial scheme.'" *MacKay*, No. 08-cr-106, slip. op. at 13 (quoting *United States v. BCCI Holdings (Lux.), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995)).  The District Court therefore declined to impose a constructive trust and found that, as a result, Willis and Venture had no "legal . . . interest" in the property that would allow them to contest the forfeiture of MacKay's assets. Accordingly, the Court dismissed Willis and Venture from the ancillary proceeding.

The District Court ultimately entered a Final Order of Forfeiture on April 14, 2010, based on a settlement agreement reached among the remaining parties.  The settlement provided principally that People's United Bank and the Town of Williston would be paid their debts owed, plus interest, while the remainder of the proceeds from the sale of the property would be forfeited to the United States.  Willis and Venture now appeal from the Final Order of Forfeiture and the District Court's underlying rulings, including the Memorandum and Order dismissing their petition for an ancillary proceeding.  For its part, People's United Bank asserts the alternative argument that any error by the District Court in dismissing the petitioners from the ancillary proceeding was harmless because People's United Bank's interest in the properties should be accorded at least equal priority with any constructive trust recognized in favor of the petitioners.  Finally, Willis and Venture urge that the District Court also erred by accepting People's United Bank's status as a valid claimant and by entering the Final Order of Forfeiture pursuant to the remaining parties' settlement agreement without first holding an evidentiary hearing.

7

**DISCUSSION**

I

The parties disagree as to the proper standard of review on appeal. The United States and People's United Bank argue that the District Court exercised its discretion in not imposing the equitable remedy of a constructive trust and that therefore an abuse of discretion standard applies. Willis and Venture, on the other hand, argue that because the District Court denied the constructive trust as a matter of law, our review should be *de novo*.

It is true that we have applied an abuse of discretion standard in reviewing a district court's denial of equitable relief. *See Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 374 (2d Cir. 2000). However, "[t]he abuse of discretion standard is used to evaluate the court's application of the facts to the appropriate legal standard, and the factual findings and legal conclusions underlying such decisions are evaluated under the clearly erroneous and *de novo* standards, respectively." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 103 (2d Cir. 2009) (internal quotation marks, ellipsis, and alteration omitted). In this case, the District Court reached two legal conclusions on the basis of which it declined to impose a constructive trust. First, the Court determined that "*Ribadeneira* supports the conclusion" that the statutory remission provision of 21 U.S.C. § 853(i) is an adequate legal remedy that precludes the imposition of a constructive trust. Second, after recognizing our potentially conflicting *Schwimmer* decision, the Court "decline[d] to follow *Schwimmer* and instead follow[ed] *Ribadeneira*" because it believed that "an approach allowing for a constructive trust when a legal remedy is available is 'inconsistent

8

with the statutory remedial scheme.'" *MacKay*, No. 08-cr-106, slip. op. at 13 (quoting *BCCI Holdings*, 46 F.3d at 1191). As a result, the District Court concluded that "a constructive trust is inappropriate in this instance." *Id.* Because the District Court relied on its view of issues of law in ultimately declining to recognize a constructive trust in this case, we review its decision *de novo*.

II

A

Subsection 853(n) of Title 21 of the United States Code provides that

> (2) [a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

That subsection further provides that

> (6) [i]f, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
> the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n). Ancillary proceedings pursuant to § 853(n) are governed by Federal Rule of Criminal Procedure 32.2(c), which provides that

9

(1) **In General.** If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding . . . .

(A) In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.

Subsection 853(i) of Title 21 of the United States Code provides that, once property is

forfeited to the United States,

the Attorney General is authorized to—
(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section[.]

In this case, MacKay forfeited his interest in the Williston and Orlando properties to the

United States pursuant to his plea agreement and the Preliminary Order of Forfeiture entered by

the District Court in November 2008. In response to that Preliminary Order, Willis and Venture

petitioned for an ancillary hearing pursuant to 21 U.S.C. § 853(n)(2), asserting that the Court

should recognize a constructive trust on the properties in their favor and that the properties

should not be forfeited to the United States. The United States responded by moving to dismiss

the petition pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A) on the ground that a

constructive trust in favor of Willis and Venture should not be recognized and that Willis and

Venture therefore had no legal interest in the properties superior to MacKay's interest such that

the order of forfeiture should be amended by the Court.

"[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery

or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of

Civil Procedure 12(b)." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). Therefore, a petition should not be dismissed if the petitioner has stated "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the petition, we will assume that the facts set forth in the petition are true, *see* Fed. R. Crim. P. 32.2(c)(1)(A), however, we are not required to accept any legal conclusions included in the petition. *Cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

State law determines a petitioner's legal interest in the property at issue. *See Pacheco*, 393 F.3d at 353-56 (applying New York law to the question whether the petitioner was a bona fide purchaser for value). Under Vermont law, a "constructive trust is a tool often used by courts to prevent unjust enrichment." *Legault v. Legault*, 142 Vt. 525, 529 (1983) (internal quotation marks omitted). It is an equitable remedy that "will arise whenever title is acquired through a confidence which has been abused[.]" *Id.*; *see also Savage v. Walker*, 185 Vt. 603, 605 (2009). In considering whether to recognize a constructive trust, a court's inquiry turns on "whether, in light of the totality of circumstances, it is against equity and good conscience to allow [the] defendant to retain what is sought to be recovered." *Legault*, 142 Vt. at 531 (internal citation omitted).

We have held that a constructive trust qualifies as a "legal right, title, or interest in the property" that "may be a superior interest" to a defendant's interest for the purposes of a forfeiture statute analogous to 21 U.S.C. § 853(n)(6)(A). *See Schwimmer*, 968 F.2d at 1572,

11

1581-83 (holding that "legal interest" in 18 U.S.C. § 1963(*l*)(6) means one that arises "under the law" and not one that is "traditionally enforceable at law," and therefore includes constructive trusts). In this case, the District Court relied on our subsequent decision in *United States v. Ribadeneira*, 105 F.3d 833 (1997) (per curiam), for the proposition that while *Schwimmer* teaches that a constructive trust may qualify under § 853(n)(6)(A), "when there is a satisfactory legal remedy available," namely § 853(i), "the court should not impose an equitable remedy." *MacKay*, No. 08-cr-106, slip. op. at 12.

In *Ribadeneira*, customers of an exchange house that the defendants had used to launder money petitioned for an ancillary proceeding pursuant to 21 U.S.C. § 853(n)(2), claiming an interest in the defendants' forfeited money. *United States v. Ribadeneira*, 920 F. Supp. 553, 554 (S.D.N.Y. 1996). The petitioners had purchased checks from the exchange house that they held when the defendants' accounts were seized by the government. *Id.* The District Court first ruled that, like bank depositors, the check-holders were general creditors of the exchange house who did not have a claim in the specific property to be forfeited and therefore did not have a "legal interest" as required by § 853(n). *Id.* at 555. The District Court also declined to impose a constructive trust in the petitioners' favor. It noted that "[i]t is hornbook law that before a court may impose equitable relief, it must find there to be no adequate legal remedy available." *Id.* at 556 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). The District Court concluded that the remission process provided in § 853(i) was "not only a satisfactory, but also the appropriate, legal remedy for [the] petitioners." *Id.*

This Court affirmed the District Court's judgment in *Ribadeneira* on the grounds that the

12

petitioners had no "legal interest" in the defendants' property as required by § 853(n). *Ribadeneira*, 105 F.3d at 834-36. In a footnote, we also rejected the petitioners' argument that they should be recognized as beneficiaries of a constructive trust. We explained that "the district court correctly declined to establish a constructive trust on [the petitioners'] behalf both because [the petitioners] have not met the elements required by New York law for a constructive trust and because § 853(i) provides a legal remedy which obviates the need for application of an equitable remedy." *Id.* at 837 n.5.

In this case, the District Court erred in relying on the *Ribadeneira* footnote to conclude that § 853(i) provides an adequate legal remedy that precludes the imposition of a constructive trust. First, *Ribadeneira* is distinguishable from this case because the petitioners in *Ribadeneira* were general unsecured creditors, while the petitioners in this case allege a traceable interest in the specific properties to be forfeited to the United States. It was only for general creditors that the District Court in *Ribadeneira*, and, in turn, this Court on appeal, determined that § 853(i) was the "appropriate[] legal remedy." *Ribadeneira*, 920 F. Supp. at 556; *see also Ribadeneira*, 105 F.3d at 837 n.5. This is underlined by our prior decision in *Schwimmer*, which explicitly acknowledged the existence of a remission provision analogous to § 853(i), *Schwimmer*, 968 F.2d at 1584, but nevertheless held that a constructive trust could qualify as a "legal interest" for the purposes of the analogous forfeiture statute, *id.* at 1582. Indeed, it was because we recognized that Congress had contemplated that the Attorney General's remission process would serve "to compensate victims," that we held that it was inappropriate to relax the traditional requirements of a constructive trust under state law in order to allow a mere victim who had not

13

shown a traceable interest in the forfeited assets to assert a claim in an ancillary proceeding. *See id.* at 1583–84. The result of our decision in *Schwimmer*, therefore, was that beneficiaries of properly traced constructive trusts could claim third-party interests under the forfeiture statute, while other victims who were not entitled to constructive trusts, and did not otherwise have a legal interest in the property, should utilize the remission process instead. We reject the notion endorsed by the District Court in this case that we intended to overrule *Schwimmer* and hold that constructive trusts are never proper in the forfeiture context through one sentence in a footnote in *Ribadeneira*.

Moreover, even if the *Ribadeneira* footnote applied to this case, its conclusion that "§ 853(i) provides a legal remedy which obviates the need for application of an equitable remedy," 105 F.3d at 837 n.5, was not essential to the Court's holding because it was offered in the alternative and therefore it is dictum that is not binding on us. *See Sai Kwan Wong v. Doar*, 571 F.3d 247, 257 (2d Cir. 2009); *Donovan v. Red Star Marine Servs., Inc.*, 739 F.2d 774, 782 (2d Cir. 1984); *see also Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated."). Nor do we find that footnote persuasive. Subsection 853(i) does not provide a legal remedy for the petitioners in this case, never mind an adequate one. It only authorizes the Attorney General to, among other things, "grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims . . . , or take any . . . action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of [§ 853]." 21 U.S.C. § 853(i)(1). This is a "non-judicial remedy" that is left entirely to the Attorney General's

discretion. *DSI Assocs. LLC v. United States*, 496 F.3d 175, 186 (2d Cir. 2007); *see also United States v. Shefton*, 548 F.3d 1360, 1364-65 (11th Cir. 2008).  It therefore is not an adequate legal remedy that would deprive a district court of its equitable powers to recognize a constructive trust.  *See Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323, 2331 n.3 (2010) (noting that an adequate legal remedy "must be one cognizable *in federal court*" (internal quotation marks omitted)).

The District Court in this case also relied on a case from one of our sister Courts of Appeals, *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995), in concluding that imposing a constructive trust when the purported adequate legal remedy of § 853(i) was available would be inconsistent with the forfeiture statutory scheme.  *BCCI Holdings* acknowledged our *Schwimmer* decision but expressly declined to follow it because, according to the *BCCI Holdings* Court, we "did not consider whether a judicially imposed constructive trust would be inconsistent with the statutory remedial scheme." *Id.*

We now explicitly conclude that there is no inconsistency, and we are not persuaded by the argument in *BCCI Holdings* to the contrary.  First, as the Court of Appeals for the Eleventh Circuit has explained, "one of its premises is incorrect." *Shefton*, 548 F.3d at 1366.  The *BCCI Holdings* Court relied in part on the fact that the forfeiture statute required a third party to possess a superior interest at the time of the commission of the acts that gave rise to the forfeiture, while, in its view, a constructive trust "could not have been shown to exist at the time the acts were committed." *BCCI Holdings*, 46 F.3d at 1191.  We disagree.  "Although a constructive trust is a judicially recognized remedy, it arises when the underlying equities exist,

15

not when it is announced[.]" *Shefton*, 548 F.3d at 1366 (internal citation omitted); *see also United States v. $4,224,958.57*, 392 F.3d 1002, 1004 (9th Cir. 2004) ("It is an elementary mistake to suppose that a court creates the trust."). While it is true that a court evaluates the equities after the fact, if the circumstances are such that a constructive trust should be recognized, the defendant never truly acquired an interest in the property at issue and only held it as a trustee for the beneficiaries.

Second, *BCCI Holdings* also relied on 18 U.S.C. § 1963(c), a subsection analogous to 21 U.S.C. § 853(c), which, along with the latter subsection, provides that "[a]ll right, title, and interest in property described in [this] section vests in the United States upon the commission of the act giving rise to forfeiture under this section." 18 U.S.C. § 1963(c); 21 U.S.C. § 853(c); *see also BCCI Holdings*, 46 F.3d at 1191. The *BCCI Holdings* Court reasoned that by this language, Congress effectively created a constructive trust in favor of the United States arising at the time of the fraudulent acts and therefore held that courts were not free to "fashion another remedy . . . that also reaches back to snatch the property away from the United States—which is exactly what a constructive trust would do." *BCCI Holdings*, 46 F.3d at 1191.

Any reliance on this logic or on § 853(c) in this case is misplaced. Subsection 853(c) is titled "Third party transfers" and clarifies that because the United States' interest in fraudulently obtained property "vests" at the time of the fraud, property that is subsequently transferred to another party may also be forfeited to the United States unless the transferee shows that it was a bona fide purchaser for value pursuant to § 853(n)(6)(B). Subsection 853(c) therefore, like its analog, 18 U.S.C. § 1963(c), presumably was meant to "close a potential loophole in current law

16

whereby the criminal forfeiture sanction could be avoided by transfers that were not 'arms' length transactions." S. Rep. No. 98-225, at 200-01 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3383-84 (discussing 18 U.S.C. § 1963(c)). Nothing about 21 U.S.C. § 853(c) suggests that the United States' interest trumps that of all other parties. On the contrary, § 853(c) states that even though the United States' interest "vests" "upon the commission of the act," a transferee may still retain the property by showing that it was a bona fide purchaser for value. Alternatively, like Willis and Venture in this case, a third party could show, pursuant to § 853(n)(6)(A), that it had a "legal . . . interest" in the property superior to the defendant's. This is true because if a constructive trust properly should be imposed on particular property that was in the possession of the defendant, it was never truly the defendant's property and is not subject to forfeiture to the United States in the first instance. In declining to follow *BCCI Holdings*, we join several of our sister Courts of Appeals that have noted criticism of that decision. *United States v. Salti*, 579 F.3d 656, 670 & n.18 (6th Cir. 2009); *Shefton*, 548 F.3d at 1366; *$4,224,958.57*, 392 F.3d at 1004.

Finally, there is no specific conflict between recognizing a constructive trust pursuant to § 853(n)(6)(A) and the remission process provided in § 853(i). Subsection 853(i) applies to "property ordered forfeited under this section" and provides a way for property already forfeited to the United States to be returned to victims. However, if the property is not forfeited in the first instance, § 853(i) simply would not apply to the property. In this case, for example, if the District Court finds that Willis and Venture have a genuine property interest in MacKay's homes and therefore imposes a constructive trust, the property would not be forfeited to the United

17

States pursuant to § 853(n)(6)(A) and no remission process as to that property would be necessary.

For all of these reasons, we conclude that the District Court erred in ruling that § 853(i) precluded the recognition of a constructive trust and in determining that a constructive trust would be inconsistent with the statutory forfeiture scheme.

On remand, the District Court should consider whether, pursuant to Vermont law, a constructive trust should be recognized in favor of the petitioners. We reiterate that, for the reasons explained above, the existence of the forfeiture statute, including § 853(i), or a district court's general policy preference for forfeiture are not proper bases for declining to recognize a constructive trust. Congress determined in enacting § 853(n)(6) that if a third party has a "legal . . . interest" in the property to be forfeited that is superior to the defendant's interest, "the court shall amend the order of forfeiture." And it is the law of this Circuit that a constructive trust qualifies as a "legal . . . interest" for the purposes of § 853(n)(6)(A). *See Schwimmer*, 968 F.2d at 1582. Individual district courts in this Circuit therefore are not free to effectively overrule *Schwimmer* by declining to recognize constructive trusts for reasons that would apply to every case where a constructive trust is asserted in the forfeiture context. Rather, district courts should evaluate whether a constructive trust should be recognized pursuant to the applicable state law and based on the facts of the particular case at issue.

We do not foreclose the possibility that, in considering whether a constructive trust ought to be recognized pursuant to Vermont law in this case, the District Court—if permitted to do so by Vermont law—could give some weight to the application of the forfeiture statute to the

18

properties and parties before it. In other words, we do not foreclose the possibility that a district court would have the discretion to deny a constructive trust where justice would be better served by allowing some other manner of compensating victims, including the Attorney General's discretion under § 853(i), in light of the facts of a particular case. We note, however, that based on the record heretofore developed, we see no reason why a constructive trust should not be recognized. This is not a case where imposing a constructive trust would unfairly elevate the petitioners' claims over those of multiple "similarly situated victims." *See, e.g.*, *United States v. Ramunno*, 599 F.3d 1269, 1275 (11th Cir. 2010) (affirming district court's decision not to impose a constructive trust because doing so would give one similar victim priority over another). The various claimants in this case all appear to have filed petitions pursuant to § 853(n)(6), and that subsection allows the District Court to consider competing claims. However, we leave open whether other factors not now visible would cause the District Court to determine that a constructive trust should not be recognized.

## B

People's United Bank makes the alternative argument that even if the District Court ultimately recognizes Willis and Venture as the beneficiaries of a constructive trust, that interest will not trump the Bank's interest in the properties as a mortgage-holder and bona fide purchaser for value of the homes pursuant to § 853(n)(6)(B). Accordingly, People's United Bank argues that Willis and Venture will receive the same amount of money whether the District Court recognizes a constructive trust or whether Willis and Venture are instead forced to resort to § 853(i). Whether People's United Bank is actually a bona fide purchaser for value for the

purposes of § 853(n)(6)(B) and, if the petitioners and the Bank in fact have competing interests, how MacKay's assets then should be allocated, are questions for the District Court in the first instance. Indeed, the purpose of the ancillary proceeding is for the District Court (rather than the Attorney General) to amend orders of forfeiture and apportion assets when one or more third parties claim an interest in the property to be forfeited. In this case, Willis and Venture respond that People's United Bank is not a bona fide purchaser for value because the Bank allegedly had prior knowledge of MacKay's fraudulent activity. If Willis and Venture are ultimately allowed to participate in an ancillary proceeding by virtue of a constructive trust, they can raise this argument to the District Court and the District Court, of course, should consider it before approving the Bank's own claim pursuant to § 853(n)(6)(B). We need not resolve any of this now except to say that People's United Bank has not shown that the District Court's error in declining to recognize a constructive trust on the basis of its interpretation of *Ribadeneira*—an interpretation we now reject—was harmless.

C

Finally, we need not reach the question whether it was proper for the District Court to enter a Final Order of Forfeiture based on a settlement agreement among the remaining parties and without holding a hearing because we vacate the Final Order of Forfeiture and the petitioners' dismissal from the ancillary proceeding and remand for further proceedings.

**CONCLUSION**

For the reasons explained above, the District Court's Memorandum and Order dismissing

20

Willis and Venture from the ancillary proceeding and its Final Order of Forfeiture are **VACATED**. The case is **REMANDED** to the District Court for proceedings consistent with this opinion.