UNITED STATES of America

v.

Bernard L. MADOFF, Defendant.

Robert A. Baird and Randy Morrison Baird, Petitioners.

No. 09 Cr. 213 (DC).

United States District Court,
S.D. New York.

Nov. 29, 2011.

Preet Bharara, Esq., United States Attorney for the Southern District of New York by: Barbara A. Ward, Esq., Matthew L. Schwartz, Esq., Assistant United States Attorneys, New York, NY, for United States of America.

Robert A. Baird and Randy Morrison Baird, Newport Beach, CA, Petitioners Pro Se.

## MEMORANDUM DECISION

CHIN, Circuit Judge.

In April 2006, petitioners Robert A. Baird and Randy Morrison Baird, clients of Bernard L. Madoff Investment Securities ("BLMIS"), gave defendant Bernard Madoff a sculpture made from three African masks (the "Sculpture"). They did so to thank Madoff for taking "such good care" of their family's investment. Three years later, Madoff pled guilty to defrauding BLMIS clients of billions of dollars.

In this case, the Bairds seek the return of the Sculpture, which was forfeited to the government after Madoff's plea. On February 7, 2011, the Bairds filed a petition asserting a claim to the Sculpture. On March 18, 2011, the government moved to dismiss the petition.

For the following reasons, the government's motion is granted. Accordingly, the petition is dismissed.

## BACKGROUND

### A. *The Facts*

The facts alleged in the petition and set forth in the exhibits attached thereto are assumed to be true for purposes of this motion.

The Bairds invested money with BLMIS from 1999 forward. (Pet. 1, Ex. D).[1] Over the years, BLMIS issued financial statements leading the Bairds to believe their investment had greatly appreciated. (Pet. ¶ 7). As a result, the Bairds wanted to thank Madoff for "taking 'such good care' of [their] family's money." (Pet. ¶ 4, Ex. D).

In a letter to Madoff dated April 4, 2006, Robert Baird wrote of his intention to present Madoff with a gift:

> Our extended family has had a "CM" account with your firm for slightly over six years.... It has been a financial "security blanket" for us and we are constantly grateful and appreciative of your efforts on our behalf.... My wife, daughter and I will be in New York from April 9–13th, I would like to come by your office to say hello, and to bring you a small token of our appreciation.

(Pet. Ex. D1). Subsequently, the Bairds arranged to meet Madoff at his BLMIS office in New York City. (*See* Pet. ¶¶ 4–5).

Prior to the meeting, the Bairds "took great care in choosing a 'thank you' gift to bring to MADOFF." (Pet. ¶ 4). They chose the Sculpture, which consisted of three small African masks affixed to metal rods and inserted in a curved wooden stand. (*See* Pet. Ex. A, Ex. B). The Sculpture was worth several hundred dollars.[2] It also had great sentimental value, as Robert Baird's father had acquired it in Liberia during the 1970s. (Pet. ¶ 2). "Despite the item's sentimental ... [and] dollar value," the Bairds were willing to give up the Sculpture to thank Madoff. (Pet. ¶¶ 4, 8).

At the meeting, the Bairds' daughter—who was then only thirteen years old—presented Madoff with the Sculpture. (Pet. ¶¶ 4–5). Randy Morrison Baird described the exchange as follows:

> My daughter presented [Madoff] with the AFRICAN MASK SCULPTURE and thanked him directly for taking good care of her college fund. MADOFF appeared quite pleased with the gift.... [H]e looked her in the eye and smiled at her, and then looked at my husband and me and thanked us for bringing him the AFRICAN MASK SCULPTURE.

(Pet. ¶¶ 5–7). Thereafter, the Bairds shook hands with Madoff and left the BLMIS offices. (Pet. ¶ 5).

After they returned to their home in California, the Bairds also sent Madoff a book with a photograph of an African mask similar to the masks in the Sculpture. (Pet. ¶ 6). Madoff replied with a

---

1. References are as follows: "Forfeiture Order" to the Preliminary Order of Forfeiture of June 26, 2009; "Stip. & Order" to the Stipulation & Order of June 26, 2009; "Pet." to the Petition for a Hearing to Adjudicate the Validity of the Claim of Robert A. Baird and Randy Morrison Baird's Interest in the African Sculpture of February 7, 2011; "Gov't Mem." to the Government's Memorandum of Law in Support of its Motion to Dismiss the Petition of Robert A. Baird and Randy Morrison Baird of March 18, 2011; and "Opp'n Letter" to Robert A. Baird and Randy Morrison Baird's Letter in Opposition to the Government's Memorandum of Law in Support of its Motion to Dismiss the Petition of March 23, 2011.

2. According to the Bairds, the U.S. Marshals Service listed the Sculpture, along with two other sculptural items seized from Madoff's home, in a single auction lot valued at $520–740 for all three items. (Opp'n Letter).

hand-written thank-you note. (*See* Pet. Ex. D2, Ex. D3).

### B. *Procedural History*

#### 1. *Madoff's Plea and Preliminary Order of Forfeiture*

On March 12, 2009, Madoff pled guilty to eleven counts of fraud, money laundering, and other charges in connection with a scheme to defraud BLMIS clients. On June 26, 2009, I entered a Preliminary Order of Forfeiture requiring Madoff to forfeit all of his right, title, and interest in certain properties, including "the proprietary lease for ... Apartment 11A/12 in the building located at 133 East 64th Street, New York, New York, 10021 ... together with ... all valuable, insured or salable personal property contained therein." (Forfeiture Order Ex. A ¶ 1). I also endorsed a Stipulation and Order authorizing the government to sell, among other things, the foregoing property. (Stip. & Order ¶ 1).

#### 2. *The Bairds' Attempted Recovery of the Sculpture*

In August 2009, after learning of Madoff's criminal conduct and mishandling of their investment, the Bairds sought to recover the Sculpture. (Pet. ¶ 9, Ex. C). The Bairds contacted Irving Picard, the trustee appointed by the bankruptcy court to oversee BLMIS' liquidation. (Pet. ¶ 9, Ex. C). Their efforts were to no avail, as neither Mr. Picard nor the government could locate the Sculpture. (Pet. ¶ 10, Ex. E).

More than a year later, on November 11, 2010, the Bairds' daughter saw the Sculpture on the internet. (Pet. ¶ 11). Featured on Yahoo News as part of the "Madoff Auction items," the Sculpture was to be auctioned by the government. (Pet. ¶ 11). The Bairds immediately contacted the government; the government then withdrew the Sculpture from the auction and held it pending resolution of the Bairds' claim. (Pet. ¶ 12–13).

#### 3. *The Petition and The Government's Motion to Dismiss*

On February 7, 2011, the Bairds filed a third-party petition to adjudicate the validity of their claim in the Sculpture. The Bairds argue that, while they gave the Sculpture to Madoff as a gift, they would not have done so if they had known of his criminal and fraudulent mishandling of their investment. (Pet. ¶ 7). Further, the Bairds imply that their gift was conditional because it was based upon their belief that Madoff was lawfully and honestly handling their investment. (Opp'n Letter 1). The Bairds assert that because Madoff failed to satisfy this purported condition, the Sculpture should be returned to them. (Opp'n Letter 1–2).

On March 18, 2011, the government moved to dismiss the Bairds' claim pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A) for lack of standing and for failure to satisfy the statutory requirements of 21 U.S.C. § 853(n)(3). (*See* Gov't Mem.). Specifically, the government contends that the Bairds lack standing because they lost their interest in the Sculpture when they gave it to Madoff as a gift. (Gov't Mem. 13–15). In addition, the government argues that dismissal is warranted because the Bairds fail to satisfy the statutory requirement that a third-party petition "set forth the nature and extent of the petitioner's right, title, or interest in the property." 21 U.S.C. § 853(n)(3). (Gov't Mem. 15).

### DISCUSSION

#### A. *Legal Standard for a Motion to Dismiss a Petition in a Forfeiture Proceeding*

 A motion to dismiss a third-party petition asserting an interest in property

subject to forfeiture should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *Pacheco v. Serendensky,* 393 F.3d 348, 352 (2d Cir.2004). To survive dismissal, a petition must set forth enough facts to "state a claim to relief that is plausible on its face." *Willis Mgmt., Ltd. v. United States,* 652 F.3d 236, 242 (2d Cir.2011) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While the court must assume the facts set forth in the petition to be true for purposes of the motion, Fed.R.Crim.P. 32.2(c)(1)(A), the court is not required to accept any legal conclusions in the petition, *Willis Mgmt.,* 652 F.3d at 242.

Accordingly, in considering the government's motion to dismiss the Bairds' petition, I assume all facts set forth in the petition and accompanying exhibits to be true, and I draw all reasonable inferences in favor of the Bairds.

### B. *Petitioners' Legal Interest in the Sculpture*

#### 1. *Applicable Law*

■ A third-party petition asserting an interest in property subject to criminal forfeiture must set forth, among other things, "the nature and extent of the petitioner's right, title, or interest in the property." 21 U.S.C. § 853(n)(3). The petitioner bears the burden of proving his right, title, or interest by a preponderance of the evidence. 21 U.S.C. § 853(n)(6)(A). Courts will look to state law to determine a petitioner's legal interest in the contested property. *Willis Mgmt.,* 652 F.3d at 242.

■ Under New York law, an inter vivos gift is perfected when the following

three conditions exist: (1) intent by the donor to make a present, irrevocable transfer; (2) actual or constructive delivery of the gift to the donee; and (3) acceptance of the gift by the donee. *Gruen v. Gruen,* 68 N.Y.2d 48, 53, 505 N.Y.S.2d 849, 496 N.E.2d 869 (1986).[3]

■ Whether a donor possessed the requisite donative intent is a question of fact. *See Matter of Kilts' Estate,* 54 A.D.2d 772, 773, 387 N.Y.S.2d 392 (3d Dep't 1976); *see also Gruen,* 68 N.Y.2d at 53–54, 505 N.Y.S.2d 849, 496 N.E.2d 869 (noting donor's conduct, letters, and statements supported finding that donor intended to transfer ownership of painting to donee). Further, a donor's "motivation for making the gift or the wisdom of his making it is irrelevant to the question of whether he intended to make it." *Knight v. Knight,* 182 A.D.2d 342, 344, 589 N.Y.S.2d 195 (3d Dep't 1992) (rejecting defendant's contention that gift was not perfected because premise upon which defendant gave gift was false).

#### 2. *Application*

■ Even assuming all the facts in the petition and accompanying exhibits to be true, the Bairds fail to state a plausible claim to relief because they have not alleged facts sufficient to establish any cognizable legal interest in the Sculpture. Based on their own account, the Bairds' presentation of the Sculpture to Madoff effectuated an irrevocable gift and thus divested them of any interest in the Sculpture.

First, the details set forth in the petition and accompanying exhibits show that the Bairds intended to transfer ownership of the Sculpture to Madoff. In his April 4,

**3.** The parties do not dispute which state's substantive law governs the Bairds' legal interest in the Sculpture. As the Sculpture was transferred, seized, and forfeited in New York, the Court applies New York law.

2006 letter to Madoff, Robert Baird wrote of his intention to present Madoff with a "token of [the Bairds'] appreciation." (Pet. Ex. D1). The petition frequently refers to this token of appreciation—later identified as the Sculpture—as a gift. (Pet. ¶¶ 4, 5, 7, 8, Ex. C; Opp'n Letter). The Bairds' characterization of the Sculpture as a gift to Madoff is reflective of their donative intent. Such intent is implicated by the "great care" the Bairds took in choosing the gift for Madoff. Finally, the Bairds' acknowledgment that they gave Madoff the Sculpture despite its "sentimental value" demonstrates that the Bairds understood that giving the Sculpture to Madoff would result in their loss of its ownership. Taken together, these statements show that the Bairds possessed the requisite intent to give Madoff the Sculpture.

Second, the petition unequivocally states that the Bairds and their daughter personally delivered the Sculpture to Madoff: "My daughter presented [Madoff] with the AFRICAN MASK SCULPTURE." (Pet. ¶ 5). In discussing their daughter's discovery of the Sculpture, the Bairds refer to this delivery once again: "Since [our daughter] had personally handed [the Sculpture] to MADOFF, she very vividly remembered what it looked like." (Pet. ¶ 11). Based on these statements, the second element of a gift—delivery to the donee—is satisfied.

Third, the petition states that Madoff verbally thanked the Bairds and their daughter for the Sculpture. (Pet. ¶ 7). A July 5, 2006 letter from Madoff to the Bairds echoes Madoff's gratitude. (*See* Pet. Ex. D2). These declarations unequivocally show that Madoff accepted the gift. Additionally, the Sculpture was seized from Madoff's home over three years after the Bairds' delivery of the Sculpture to Madoff. Accordingly, there is no doubt

that Madoff accepted the Bairds' gift. Thus, the third element of a gift—acceptance of the gift by donee—is also satisfied.

The Bairds are understandably frustrated by their loss of both a cherished family heirloom and their investments. But they are not alone. Moreover, under the law, a gift is not revocable merely because the premise for the gift was false. *See Knight*, 182 A.D.2d at 344, 589 N.Y.S.2d 195 ("We reject the contention that the July 1985 instrument did not constitute a gift because its 'foundational premise', that plaintiff's efforts at keeping the family business operable[,] prevented default of Prellwitz's notes and loss of her home, was false.").

Moreover, there are no specific or concrete facts asserted in the petition or in the Bairds' response to the government's motion to dismiss to suggest that, at any time during the conveyance, the Bairds qualified their gift to Madoff with any conditions, or that Madoff expressly or impliedly agreed to return the Sculpture if certain conditions were not met. Thus, the Bairds' claim that their gift was conditional is not supported by the facts alleged in the petition and is not plausible. *See also Rosenberg v. Lewis*, 210 A.D. 690, 692, 206 N.Y.S. 353 (1st Dep't 1924) (dismissing plaintiff's claim based on lack of evidence that gift was conditional).

Accordingly, the Bairds' conveyance of the Sculpture to Madoff satisfies the requirements of a gift under New York law, divesting the Bairds of any legal interest in the Sculpture. *See Gruen*, 68 N.Y.2d at 55–56, 505 N.Y.S.2d 849, 496 N.E.2d 869; *see also Rosenberg*, 210 A.D. at 690, 206 N.Y.S. 353. Even assuming all the facts in the petition and accompanying exhibits to be true, the Bairds have not alleged sufficient facts to suggest they have a legal

interest in the property. Hence, their claim fails.

### CONCLUSION

For the foregoing reasons, the government's motion to dismiss the Bairds' claim is granted and the Bairds' petition is dismissed. The government shall submit a proposed final order on notice forthwith.

SO ORDERED.